The refusal clause of the Civil Rights Act of 1866 provides a federal forum for a discrete class of civil rights issues that Congress deems central to federal concern, even when those issues are raised as defenses. Under this provision, this case should have been in federal court all along, and the court should reverse the district court's remand order. In all events, this unique and rarely used provision provided ample support for the General Assembly's removal attempt, and the Plaintiff's Cross Appeal is therefore self-baseless. As time permits, I would like to address three broad topics. The first is mootness, the second is the merits of our appeal, and the third is the merits of the Plaintiff's Cross Appeal. But please be generous with questions, because there's a lot of issues in this case. So first, turning to the question of jurisdiction. This court can afford relief to the General Assembly by vacating the district court's trigger a provision of the new 2019 redistricting law that automatically reverts the state to the 2017 plans challenged by the plaintiff. Now the plaintiffs contend that it's too late for that to occur, because it would cause election administration difficulties. But that is really a question of policy that the General Assembly itself addressed in enacting this law in the first instance. This court's jurisdiction is not a balancing of equitable interests where it weighs the balances of harms. If the court were to vacate and trigger this provision, then it would be the General Assembly's responsibility to determine whether that's still good policy under the circumstances. And the very act of putting the General Assembly back in charge of the election administration and election law state is itself a form of relief, because it would afford the General Assembly the prerogative to make that decision. So even if we took, for example, the most extreme circumstance where the General Assembly just determined that it was too late in the election process to stick by the 2017 plans that would automatically spring back into effect. And suppose that it just decided to reenact the 2019 plan without condition. That would be an act of its own free will and would be a form of relief. And I would commend the court's attention on this issue, the Chafin versus Chafin case in the Supreme Court, where the court emphasizes that mootness doesn't turn on a certainty of all of the relief. It turns on a possibility of some of the relief. It expressly states that courts often adjudicate disputes where the practical impact of any decision is not assured. I would also submit that this different posture that we have here... Do you agree that we only reach the mootness question, or at least we're permitted to only reach the mootness question if you prevail on the merits? So in other words, these are both jurisdictional questions. We don't have to reach one over the other. If we agree with your opponent on the refusal clause argument, there's no reason to address mootness at all, right? Well, I think that would be odd because mootness goes to the court's jurisdiction. So generally, that is... So doesn't compliance with a removal provision go to this court's jurisdiction? Don't we lack jurisdiction if the case is improperly removed? I think the jurisdictional... That would be the district court's jurisdiction. You have jurisdiction to decide the question of jurisdiction under the appeal provision where Congress said that the removal... The remand order shall be reviewable on appeal. But certainly, if the court were to choose to go in a different direction, we believe that we have better of the argument on the refusal provision as well. No, no. I'm not trying to question that. I just want to just understand, do you believe that there's a decision order issue that we must take them in the order that you've taken them, or alternatively, that we're required to answer both of them for some reason? I was under the belief, Your Honor, that because the mootness question is the predicate jurisdictional question of whether the appeal is moot, and therefore, this court lacks jurisdiction to decide the appeal, that that would come first. That said, we don't have strong feelings because we think we win under both. That leads me to the position that they've argued that we are no longer refusing to implement their version of state law. I think what that argument misses, first off, is that the refusal issue is a removal issue that's assessed at the time of removal. I think it falls flat right there. Furthermore, the missing link in their argument is that we lost in the district court, and the district court did remain. Once we're in that position, we're really in the position of any litigant who does not prevail on an issue, and wants to challenge that issue, and you bifurcate your approach. You challenge it as you're allowed to, but then you coordinate your litigation strategy based on the assumption that that is a valid order. We did everything in the state court, and everything that they described and they brought in their flurry of Rule 28J letters. We did all that under the assumption that the district court here was right. Of course, if there had been a different order, we would have done different things. We would have taken a different litigation approach, and sitting here and speculating about how that would have worked and what would have led to, I think is a futile effort. I don't think that's persuasive either. Finally, that leads to the full faith and credit argument. We have three responses to that. The first is that appeal provision that I referenced, which provides that these remand reasonable conflict with full faith and credit. You can't give full meaning to the word shall be reviewable on appeal, and then carve out a whole class of cases where there is a judgment in the state court first. Worse, that really creates an incentive on the part of the state court to reach a judgment first. Keep in mind, we're talking about sensitive issues of discrimination. Did you and could you have sought a stay pending appeal on the remand order? The district court remands, and you file a notice of appeal under 1447. I assume you did not, but could you have filed a motion to stay the remand order pending the 1447D appeal? It's very problematic. It's doubtful. Why? Help me understand why. The reason is because of what occurred after the remand order was issued. The district court then almost immediately sent the order by certified mail to the district court. The plaintiffs took the position that once that was done, there was absolutely nothing the district court could do about anything. We disagreed with that, and we lost. We couldn't have gone to the district court for a stay because the court had already ruled against us on that. Coming up here, we would have been in trouble. What do you mean when the court had already ruled against you on that? You asked the district court to stay its order pending appeal? No, what we asked for was to stay the mailing so that we could decide whether to move for a stay. Well, that's different. They came back and said, no, it's too late. They can't even do that. Never mind a stay. They can't even give you time to think about a stay. You've got to go right back to state court, and there's nothing that can be done about it. And the district court disagreed with them on that. We thought we had a good argument on that. I do concede they had a good argument. I think that's very much an unsettled issue. But keep in mind, then if we come up here, not only do we have to meet the stay elements, which is not very easy to do, as Your Honor well knows, but then we have to establish some basis of jurisdiction, and we may even have anti-injunction act issues going back below. So the stay option is even more difficult here than it is in ordinary circumstances. And I would add, Your Honor, the fact that my friends on the other side are going to these other options to demonstrate why full faith and credit doesn't apply just establishes why there's an intractable conflict here. Because the question here isn't whether there's some other option to achieve Congress's policy. The question is whether this provision is in conflict with full faith and credit. And they can't go to that provision and show you how it says shall be reviewable on appeal really has to mean may be reviewable in some circumstance. So there's an intractable conflict there. Now we have stated our other positions, I think adequately in our brief, and if I may turn to the merits of the refusal clause. We contend that there are three basic elements of removal under this provision. The first is a demand by the plaintiff for an affirmative act that is refused by the state actor. The second is that the state actor must be responsible for that act. And the third is that there must be a colorable inconsistency between or a grounds assertive of a colorable inconsistency between that act and law providing for equal rights. So let's turn to the first. There's a fundamental difference between a case seeking a prohibitive injunction and one seeking affirmative assistance from the state. Ordinarily, when a plaintiff goes to court against the government, it just wants relief, stopping the government from doing something, and that's it. For example, in the famous Affordable Care Act litigation, the plaintiff said, please enjoin the Affordable Care Act or portions of it. But they didn't ask for a new health care law from the government. That wasn't part of the case. That's the ordinary case. And that type of case is not going to be covered under the refusal clause. But this case is different. It's under the unique class of cases where a plaintiff comes in and not only wants something enjoined, but also wants something affirmative from the state. And what the plaintiffs want here is a redistricting plan. And much of their fire in their arguments is addressed to the fact that they do want injunctive relief, and they try to ignore that latter part. But it's not unusual at all that someone who wants some affirmative assistance also wants an injunction, because that's sort of two sides at the same point. You need the state to stop doing what it's doing before you can get the state to do what you want it to do. So that's the first element, and we meet it. The second element. And what did you refuse to do? We refused to. To redistrict? You did that? I'm sorry. You refused to do what? To enact the district. What did you refuse to do? Just a simple question. To enact the redistricting plan. So you didn't do it. Did you redistrict? Not at the time of the refusal. No. OK, and this goes back to what I'm saying. We have since then, but as I said earlier, it's contingent on the outcome of this case. And it's contingent on the district court's order. And that goes back to what I'm saying. So you're not refusing. You've done it. Correct? I think we're refusing in the relevant sense, Your Honor. We refused at the time of the refusal, which is the relevant time period, as they even conceded in their brief. Now at this stage, we enacted the law on the assumption that the district court's order would be correct. I would add further, Your Honor, that by that stage in the case, they had changed their theory of the case. And so there's a substantial difference in what was enacted and what they originally asked for. And that, I think, is part of the reason that getting into that morass, what happened in between, is just not appropriate. It would have to look like a 12 v. 6 case at the complaint and our papers, our removal notice, to identify the conflict. And at that time, we didn't just give them a plan, which we could have done. We could have, at the start of the case, enacted a new plan that implemented the state law as they requested it, which at the time would have required a sense of proportionality on a partisan basis. We could have done that, and we didn't. So that's the refusal. And actually, that really, I think, answers the second element, which is that this is the body before the court that is most capable of doing the refusal. And the plaintiffs are contending that there's an executive enforcement element in this, but that's not in the statute. The statute says defend it, and it says act. And as the Bridgeport Education Association case says, this is really a requirement that there be a public body acting under color of law. And there really isn't a more quintessential example of a government authority acting under color of law than a legislature when it acts a law. Tell me why I understand your textual argument. You make the claim that Baines is not a holding of this court, that it's not binding upon us. On this issue. On this issue. It is binding, but not on this issue. Help me understand, because the way you articulated that, thankfully I'll say, didn't convince me. So help me understand a little bit why it is when I look at the section. And it's rather short. I can see that, but the petitioners claim that the refusal falls under Clause 2, the refusal clause of Clause 2, or Subsection 2. That only applies to state officers who refuse to enforce. Yes, Your Honor, and the reason for that is because this is the principle of stare decisis, which means we have to review the case based on the facts before the court and the issues presented. And this is the warning that the Supreme Court gave us in cases like the Arkansas Fish and Gaming Commission versus the United States, where it said just plugging a word out, the word enforcement, when that's not a distinction that was under consideration, doesn't fall within the principle of stare decisis. The district court called it dicta, and we did cite that. I actually don't even think it rises to the level of dicta. It's a word in an opinion. And what matters is that those were private individuals, and the court had no occasion to consider what would have happened had it been a legislative body. May I finish my answer, Your Honor? Please, with the chief's indulgence. Sure. There was no occasion for the court in Faines to consider what would be different if a legislative body had been present. The removing parties there were private individuals, were civil rights protesters, and persons assisting African-Americans in registering to vote. And so there was no- Yeah, but merely, that goes too far, because that any time that a narrower rationale was available to the court, then a different rationale should not be viewed as a holding of the case. Because the court could have said, listen, this doesn't apply to private parties. That's what I take your argument. This doesn't apply to private parties, so we need not answer the question of what public officials it applies to. State, federal, executive, non-executive, enforcement, non-enforcement, those questions, maybe I get your point. But that's not the rationale that's given here. The court doesn't give the rationale merely that these are private actors. Well, I think the fair way to read the rationale was that they were not acting under color of state law. And the convenient word that was used was- Except color of state law, A, doesn't appear in the refusal clause, and B, doesn't appear in Baines in the section that we're talking about. Listen, maybe you're in the head of, I can't remember who wrote this, and you've sort of figured out what he was thinking. But it's certainly not apparent from the refusal clause, and it's not apparent from Baines itself. Well, again, the Supreme Court reminds us that when we're trying to understand, we have to read the case as a whole and look at the facts there. And there's no issue presented, or even discussion or rationale at all along the lines of distinguishing between and among state officers. My clients are state officers in their institutional capacities. So the only issue here is the word enforced. And do bear in mind, Your Honor, we do have an alternative argument on that. I'm not going to have time to get to that, but that is in our brief. And so we have a basis for that for the cross-appeal. But this is exactly the type of situation where they're plucking one word out, such as if the rationale supports it. It wasn't even considered. It wasn't part of the case at all. And if there are no further questions at this time, I'll take the remaining time for rebuttal. Thank you, Mr. Riley. Ms. Theodore? Thank you, Elizabeth Theodore, on behalf of the plaintiffs. And I'm planning on starting with mootness, then turning to why the Supreme Court's decision in Russo v. Common Cause requires affirmance of the remand order, and then turn to why the refusal clause does not apply, starting with the lack of any conflict between federal and state law. I hate to throw you off, but can you respond to that argument first? I read Baines. And I understand you have a number of other arguments that exist here. I'm not sure why those are first in your mind. But tell me why didn't Baines just sort of resolve this? Whatever we think about the text of the statute, that we read Baines, particularly in light of City of Greenwood, that I think is predictive. But certainly Baines doesn't appear to be. And that would sort of very simply resolve it. But it suggests to me, all your alternative arguments, that you don't have confidence that Baines is a holding. Why is that? We have complete confidence that Baines is a holding, as we said in our brief. And I agree with you 100% that that resolves both the appeal and the cross-appeal. The district court statement that it was victim was an error of law, which would be an abuse of discretion. It is completely clear from the Supreme Court's case law that when a court says there are two factors and neither is met, both of those factors are part of the holding. Baines said, it's got to be a state official who refuses to enforce. That's a holding, and we agree it resolves the case. So we agree completely that that resolves the case, Your Honor. The reason I was going to start on 1443 with the conflict was simply to avoid their alternative argument that they can remove on behalf of the state of North Carolina. I thought you were starting with mootness. I was, Your Honor. But as the, I apologize. Sorry, that's my fault. No, but as to 1443. We were put back to the third argument, then you said, no, no, we didn't go there because we wanted to start with the second argument. But you just told us you were going to start with the first argument. I apologize. I meant as to the arguments having to do with the refusal clause, I was going to start with the conflict argument because it avoids their argument that they could remove on behalf of the executive branch, which we also think is frivolous. But if I could turn to mootness. So the appeal is moot for multiple reasons. Even if the remand order was wrong, it wouldn't matter because the state court judgment gets full faith and credit under Section 1738. This court's decision in Bryan, which is also a holding, it holds that state court final judgments entered on remand must receive full faith and credit, even if an appellate court later determines that the remand wasn't proper. As in fact, in Bryan, the previous decision in that case by this court had determined that the remand was improper. It's clear that Section 1443 does not abrogate the full faith and credit act. The fact that it provides for an appeal can't be sufficient for abrogation. It wasn't sufficient in Bryan, where, of course, there was also a right of repeal of the remand order. And, you know, the Supreme Court, in cases like San Remo and Allen, has made clear that simply because a statute provides a right to a federal forum, or even a right to an appellate forum, doesn't mean that the statute abrogates full faith and credit unless it does so explicitly, which this act clearly does not do, especially in light of the fact that Congress removed the post-judgment removal provision from the statute over 100 years ago. Second, it's too late to provide relief. This isn't just a matter of policy, it's a matter of due process under the Supreme Court's opinion in Purcell. The election is already ongoing, people have voted, military ballots have been sent out, mail voting is going on, early in-person voting is going to start in February, and so the case is moot for that reason as well. And we have a couple of other mootness arguments, and I'll rest on our feet for those. Turning to the Supreme Court's decision in Rucho v. Common Cause, which was the subject of our 28-J letter, in which, surprisingly, it was not even mentioned by the legislative defendants, so that's a holding that federal courts lack subject matter jurisdiction over partisan gerrymandering claims, and so that means that regardless of what the refusal clause says... Based on the federal constitution, right? Rucho, your colleague's point maybe goes too far in some respects, but we do read cases based on what was addressed there. And Rucho said, the federal constitution does not give us standards, but says states might be able to, and in all kinds of contexts, like federal courts apply state law. Now, I'm not sure why that sort of matters here, but I think you read Rucho as suggesting that there's a separate categorical bar on the consideration of a state claim to that effect. We do, Your Honor, and so that's for... As did the district court in the subsequent Harper case. So, a couple of lines from Rucho. So, Rucho said there is, quote, no appropriate role for the federal judiciary in remedying the problem of partisan gerrymandering. It said that partisan gerrymandering claims present political questions beyond the reach of the federal courts. And then it did, as you noted... But each of those where they're talking about partisan gerrymandering claims, like, they're limited under the federal constitution, right? I mean, that was the only issue, the only claims that were presented there. I think the reasoning of the Supreme Court, and the reasoning is part of the holding analysis that's essential to the holding, it's part of the holding, goes further than that, especially when the Supreme Court expressly addressed state constitutional claims and said that those could be heard by state courts. I think that the clear implication of that, combined with the rest of the Supreme Court's reasoning in Rucho, is that state partisan gerrymandering claims can't be heard by federal courts. What is the doctrinal basis for that? I mean, like, would it be in Article III? Like, what would the basis be? So, you know, if a state court says, here, you know, our Equal Protection Clause can be administered, this is the test, we apply state law all the time, why would we, as a federal court, not be able to apply that state law? What's the doctrinal idea that you're getting there? The Supreme Court, I mean, the Supreme Court said that it's under the political question doctrine, which doesn't apply to state courts, but it does apply under Article III, and, you know, I think what the Supreme Court said is that federal courts can't be in the business of sort of resolving these sorts of political disputes that would be arising in every state every 10 years. That's the reasoning of Rucho, and so that would apply to a federal court, but not a state court where Article III doesn't apply, you know, in the same way that a state court doesn't have to abide by Article III standing requirements. If I can move on to why the removal was completely unreasonable under Section 1443 itself. And as I mentioned, we completely agree that Baines rendered the removal unreasonable and justified these, but let me focus on the purported conflict. Can I ask another question about that? Sure. I don't think it's clear at all. I mean, I know I sort of suggested it was clear because I was trying to get a response from somebody, but what the court says in Baine, I mean, it might be the best read of Baine, but what the court says in Baine, the whole thing is this provision of the statute is available only to state officers, period, right? It doesn't define what kind of state officers, it doesn't define what the state officers are doing. In support of that, it says it gives the language or a summary of the language from a house report, the legislative history, which was appropriate to be considered. And the legislative history is indeed broader, right? It addresses these other questions about enforcement or non-enforcement. But the actual holding, but that's just the citation to the record, right? That's the evidence given to support the holding. The holding being that the statute is available only to state officers. Why is that at least not a plausible, if not the better reading of the actual holding of Baine? So the justification, the reasoning that the Supreme Court gives in support, I'm sorry, that this court gives in support of that statement is that the purpose of the refusal clause is to enable state officers who refuse to enforce to remove. And the reasoning is part of the holding. That this statement from the legislative history was the sole basis for Baines's holding. And so the- Right, but they chose to take a narrow revert. I mean, the argument would go, they had that language. They, instead of adopting the precise language that they're relying upon from the congressional record, state officer and enforcement, they narrow it in the one sentence that's the holding, just to state officials, or state officers. I'm sorry, I don't mean officials. The second sentence is part of the holding too, Your Honor. I mean, that's what they're saying, this is what the statute is for. It's for state officers who refuse to enforce. But as I said, I don't think the court needs to address that because the conflict here is so completely preposterous and unreasonable. And so, they assert that applying state partisan gerrymander in law conflicts with the federal court order in Covington, with the 14th and 15th Amendments, and with the VRA. And let me take each of those in order. So Covington is the federal court decision holding that multiple North Carolina state legislative districts were unconstitutional racial gerrymanders in response to the legislative defendants created the plans at issue here. But the Covington court said very explicitly that its decision to approve those plans was quote, without prejudice to plaintiffs or other litigants asserting state court arguments in separate proceedings. And it specifically said that partisan gerrymandering challenges to the plans  And so, it's just objectively unreasonable to assert that the Covington remedial order required as a matter of federal law that these particular plans be used if its order would have been with prejudice to the assertion of partisan gerrymandering claims and other state court claims. Then on the 14th and the 15th Amendment, they argued that they had to intentionally discriminate against Democrats because that's the only way to avoid intentional discrimination against African Americans in violation of the Constitution. And that assertion is also just completely unreasonable and obviously wrong. It's easy to satisfy both. You simply don't consider race and then you comply with federal equal protection law and you don't intentionally discriminate against a political party. And then you comply with state partisan gerrymandering law. And so, again, it's just objectively unreasonable to assert that federal equal protection law required the legislative amendments to ignore state partisan gerrymandering law. Then finally, on the Voting Rights Act, their argument is that they had to partisan gerrymander to avoid violating section two of the Voting Rights Act. And that's also just completely objectively unreasonable. They said repeatedly in 2017 when they were enacting these plans that they had no evidence that the third jingles factor, which is legally sufficient white block voting, was satisfied. They said that the districts they now call crossover districts were naturally occurring and were not intentionally designed to satisfy section two of the VRA. And the Supreme Court held in Cooper against Harris that VRA section two simply does not apply if any jingles factor isn't met, including legally sufficient white block voting. So this means they could not have chosen to draw the 2017 plans in the way they chose or refused another version of the plans on the ground that supplying state law would be inconsistent with the Voting Rights Act. And that's what section 1443 requires. It requires them to have refused to act on the ground that complying with state law would be inconsistent with federal law. I see my time has expired. Thank you, counsel. All right, Mr. Cox. Thank you, your honors. May it please the court. I'm Paul Cox from the North Carolina Department of Justice representing the state defendants in this matter. I'll make three brief points during my brief time. One is a practicality issue. As my clients, the State Board of Elections are in the midst of administering the primary using the remedial districts that are at issue in this case. Number two, that we agree the case is moot and the appeal by the legislative defendants is moot in particular. And the state court judgment deserves full faith and credit of this court. And number three, that the state board defendants here, the entities, the officers that actually administer election laws in North Carolina did not did not make use of the refusal clause and seek removal in this case. On the practicality issue, I'll just put a finer point on what Ms. Theodore had raised, which is that the primaries are ongoing right now in North Carolina. There are over 9,000 ballots have already been mailed out to voters, military and overseas voters, absentee voters, involving these very districts that have been redrawn. Voting has already happened. Over 800 votes have already been returned to the state board of elections cast votes. Early voting is starting in a mere two weeks. So we're past the time of being able to switch gears and flip back to the old districts. I just want to know for going forward, is any of that in the record? I mean, any of the 9,000 ballots, 800 returned, is any of that in the record? It's not in the ballot record, your honor. I mean, the briefing occurred months ago before the primary began. Certainly, as a matter of public record, that voting is going on right now. And certainly, a matter of public record, that ballots have been returned. The state board posts every day how many ballots have been returned to it. But it's like on the internet? Yes, your honor. So my colleague from legislative defendants mentions that these issues of the chaos that would ensue from nullifying an ongoing election are mere policy concerns. And we agree with the plaintiffs in this case that they're not mere policy concerns that should concern the legislature if this case were reversed. Under the Purcell Doctrine, they indeed are considerations the court should make and consider when determining what relief to give in a case where there's an ongoing election. Or there's, in the Purcell case, there was an election that was about to happen. In this case, we've got an election that is ongoing. And it's not just a policy issue for the second reason that the fact that the election is ongoing as a result of remedial maps after a final judgment in state court means the case is moved. The state court judgment that was rendered after a two-week trial involving dozens of witnesses and experts, hundreds of exhibits and evidence, should be entitled to full faith and credit of this court. And we don't see any exception to the Full Faith and Credit Act that is clear contrary to the legislative defense argument. I see my time is up, but we would urge the court to dismiss on mootness. Thank you, Mr. Cox. Riley. Thank you, Your Honors. I'll try to be brief. My first root show is about 1331 jurisdiction that's predicated on the existence of a federal question. I appreciate that this case is unique and it's very different. The federal question here is the defense. And that's really weird and we're not used to that, but it's not an arising underclaim. It's the defense of the Voting Rights Act and the Equal Protection Clause that creates the federal issue. And so you don't look to the basis of the plainest claim when deciding whether you have jurisdiction. You look to the basis of the defense under the refusal clause. So the justiciability holding in root show is irrelevant for reasons that Judge Richardson suggested, which is if this case were to proceed in federal court, the rules of decision would be state rules of decision and the district court would do what a district court does in a diversity case is under the Erie Doctrine, make an Erie guess about that based on state law. So that's one. The second, I wanna turn to the cross appeal and emphasize that on all of our arguments here, we have multiple different bases to get to the same point. And so on the inconsistency element, we have three independent positions that each alone would satisfy jurisdiction. And so that's one factor that comes in when you're deciding whether to remove is we have different arguments and some might win and some might lose. We have many ways to get to the same place. The same with our standing to raise the issue. We have both an argument based on our being legislative officers, which I think the district court at least made a fair reading of Baines, even if you end up disagreeing with it. And that's not an abuse of discretion to make a judgment call like it did. But we have the alternative argument based on state law that's stated in our brief. So we have two arguments there. On inconsistency, Ms. Theodore simply misrepresents our position. We are not claiming at all that what happened in the past was required by any of those provisions, federal equal rights law, for example. Okay, the refusal clause looks to the future, the act demanded by them. And the act demanded by them in their complaint was a map that achieves a specific symmetry goal where the political parties have an equal opportunity to translate their votes into seats. And what we're saying is the demographics in North Carolina make that difficult, if not impossible, to do that and to satisfy our obligations under the Voting Rights Act at the same time. And in this regard, it's particularly significant that they cite the Pennsylvania case. Because in the Pennsylvania case, that's what the special master did at the remedial phase. He went in and made an effort to create a symmetry. And that's hard because the political parties are not evenly distributed throughout the state. The Democratic constituents are concentrated in a few areas. And so what he did was he had to go in and make a concerted effort to spread out the Democratic voters. And in the process, he dismantled a majority minority district in Philadelphia. Now, that's Pennsylvania, and you don't have the same Voting Rights Act issues that you have here in North Carolina. We have significant problems here, as this court recognized in NAACP versus McCrory, with racial black voting across the state and a close correlation of race and politics. And implementing that policy would be very different. Now, the plaintiffs ultimately abandoned that argument in the state court before we got to the end, but that's where we were at the start. That's an objective basis to remove. Thank you, Your Honors. Thank you so much. Eleanor? Thank you, Your Honor. So two sort of initial responses to what Mr. Raleigh said. First of all, it's a complete fabrication that our complaint in this case asked for a partisan symmetry goal. Second, it's a complete fabrication that the special master in the Pennsylvania case improves a partisan symmetry goal. And it's also a complete fabrication that the special master in the Pennsylvania case dismantled a VRA district. So let's just start with that. On the fee issue, Mr. Raleigh, I gather, has conceded that at the time of the removal, there was no refusal to apply state law on the ground that it would conflict with federal law. That concession is dispositive. He said that the refusal clause looks to the future and that all they needed to show was that in the future they might refuse to comply with our vision of state law. But that's just not what the clause says. The clause says that the lawsuit has to be brought for the defendant's refusal to act on the ground that acting would be inconsistent. You can't bring a lawsuit against someone for doing something if they haven't done it yet. And as far as I'm aware, there is no support in the case law anywhere for the notion that someone can bring a refusal clause claim on the basis of a refusal that might occur sometime in the middle of the trial. And in fact, this court's- But they hadn't done what you had asked. I mean, the problem is the for an act of refusal, right? Because it's a negative act. I'm not sure that- I don't think I follow your argument here. Maybe it doesn't matter. So for an act, I get that's one thing. But for a refusal act, they had not acted as you had requested at that point. Yes, but they have to have refused to act at that point on the ground of an inconsistency. And Mr. Arrell agrees that they had not refused to do anything in 2017 or at any time before we brought the lawsuit on the ground that they believed that it would violate federal law. He agrees with that. And look, stepping back, the refusal clause was designed to protect state officials in the Reconstruction era who were refusing to enforce state laws that actually discriminated on the basis of race. And you face a penalty for that refusal. And it's beyond unreasonable for these defendants to invoke it here. Every single case that they cite where a removal was actually permitted under the refusal clause was a case where there was a genuine actual conflict, like the Second Circuit White decision that they cite. That was a case where the EEOC had formally concluded that the promotion scheme at issue violated federal law. Or in Kavanaugh, that was a case where the attorney general had refused preclearance on the ground that the state law at issue violated the Voting Rights Act. And that couldn't be further from what happened here. The district court itself, even as it did- Although, again, those cases were infinitely stronger. But our own precedent indicates it's only got to be a colorable claim, right? Yes, those cases require much more. But our cases seem to have suggested that it's only a colorable claim that's required. And now, you may well have a good argument on that ground. But those were cases where there was a certainty of it, not- This court has never held that there's a colorable claim standard. That's a standard they get from some other case law. In fact, Bain said, and this is a direct quote, that the right of removal must appear in advance of trial with, quote, some certainty. Now, that was in the section not talking about the refusal clause, but it was talking about 1443. No reason it shouldn't apply. That's what Bain says. And clearly, that standard is not satisfied here. And look, the legislative defendants here, they are repeat players in these election cases. They know that delay benefits them. It's rational for them to delay. Because if they delay, there's a chance that the state court won't have time to remedy the problem for the next election. And if there's nothing to lose, they're going to keep doing it. Did they ask for expedited consideration in this court? They asked for expedited briefing, which we consented to. And they did not ask for expedited oral argument. They could have. And by the way, they could also have asked for a state pending appeal, which they did not ask for. But you did oppose their request for the district court to not mail the letter immediately. So the district court had already mailed the letter. What they did was they made a motion in the district court to, quote, confirm the applicability of a 30-day automatic stay. We said that that 30-day automatic stay did not apply, which it didn't. They never requested a state pending appeal in the district court or in this court. They never did. And it's clear that they could have made that request because the Supreme Court, in the Chestnut case, granted such a request. And listen, so after the district court denied fees here, the legislative defendants in the subsequent state law partisan gerrymandering challenge to the congressional districts, they again were moved to federal court on exactly the same basis refusal clause theory, again, at a time designed to disrupt the state court hearing. And this is a case study in why Congress provided for fees in section 1447 and why fees are needed to deter unreasonable removals. And we urge the court to grant them here. Thank you, counsel. We'll ask the clerk to adjourn the court. Signee Dye will come down and give counsel. This honorable court stands adjourned. Signee Dye. God save the United States and this honorable court.
judges: Roger L. Gregory, Diana Gribbon Motz, Julius N. Richardson